**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NICOLE BOLT COMER, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| MOSHE LEHRER a/k/a MAX LEHRER; | ) | **JURY TRIAL DEMANDED** |
| AVRAHAM LEHRER a/k/a JOE LEVIN; | ) | |
| ROSA LEHRER; and KMI GROUP, INC., | ) | |
| a New York corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Nicole Bolt Comer ("Ms. Comer") files this Complaint against **(i)** Moshe Lehrer a/k/a Max Lehrer ("Moshe Lehrer"), **(ii)** Avraham Lehrer a/k/a Joe Levin ("Avraham Lehrer"), **(iii)** Rosa Lehrer, and **(iv)** KMI Group, Inc., a New York corporation ("KMI" and, together with Moshe Lehrer, Avraham Lehrer, and Rosa Lehrer, "Defendants") and states as follows:

## PRELIMINARY STATEMENT

1. Avraham Lehrer and Moshe Lehrer (father and son) have terrorized, harassed and blackmailed Ms. Comer. Rosa Lehrer and Moshe Lehrer used KMI to maliciously prosecute civil legal proceedings against Ms. Comer in multiple Delaware courts and to commit slander of title by recording a *lis pendens* against Ms. Comer's real property in blatant disregard of Delaware law.

2. Moshe Lehrer is a former employee of Comer Enterprises, Inc., a Pennsylvania corporation ("CEI"). Ms. Comer is the sole owner, CEO and President of CEI. During the term of Moshe Lehrer's employment with CEI, Moshe Lehrer and Ms. Comer were in discussions for Moshe Lehrer to buy 49% of the stock of CEI and 49% of the stock of The Allere Group Professional Corporation, a Pennsylvania corporation ("The Allere Group") of which Ms. Comer's

father, Barney P. Bolt, Jr. ("Mr. Bolt") is the sole shareholder and Ms. Comer is the President and CEO.

3.      In the summer of 2020, Ms. Comer became aware that (i) Moshe Lehrer had defrauded her, CEI and The Allere Group, and (ii) Moshe Lehrer and Avraham Lehrer were conspiring to extort Ms. Comer.  Thus, on September 24, 2020, CEI (acting through Ms. Comer) terminated Moshe Lehrer as an employee.  Simultaneously, Ms. Comer and Mr. Bolt terminated talks with Moshe Lehrer regarding their potential stock transaction.

4.      Immediately following Moshe Lehrer's termination, Defendants commenced a campaign to reverse CEI's and Ms. Comer's decision through a repetitive drum beat of terroristic threats, harassment, blackmail, malicious prosecution of civil proceedings, and slander of title including by, upon information and belief, the following acts:  **(i)** Moshe Lehrer made an outlandishly false police report targeted at Ms. Comer; **(ii)** Moshe Lehrer harassed Ms. Comer by emailing a large list of Ms. Comer's business contacts and CEI employees a defamatory and threatening statement concerning Ms. Comer; **(iii)** Moshe Lehrer and/or Avraham Leher terrorized Ms. Comer and Mr. Bolt by sending Ms. Comer messages threatening her father's (Mr. Bolt) life; **(iv)** Moshe Lehrer and Avraham Lehrer made terroristic threats via telephone to Ms. Comer, her husband,[1] her then 20-year old daughter, at least one personal friend of Ms. Comer's, and CEI employees; **(v)** Rosa Lehrer caused KMI Group, with Moshe Lehrer's guidance and participation, to maliciously prosecute civil legal proceedings against Ms. Comer without any legal or factual justification whatsoever; and (**vi**) Rosa Lehrer caused KMI Group's attorneys to unlawfully record

---

[1] Ms. Comer and her husband are in the final stages of a long divorce process but remain professional colleagues and mutually supportive co-parents.

a bogus *lis pendens* against Ms. Comer's personal residence in hopes of frustrating an imminent sale of the property.

5.      Plaintiff seeks to put an end to Defendants' actions by requesting temporary, preliminary, and permanent injunctive relief ordering Defendants to immediately cease and desist from contacting Ms. Comer, Mr. Bolt, anyone in Ms. Comer's family, and/or anyone in Ms. Comer's social or professional orbit, as well as damages associated with Defendants' outrageous conduct.

## JURISDICTION

6.      The Court has jurisdiction over the subject matter of the above-captioned civil action (this "Action") pursuant to 28 U.S.C. § 1332.

7.      The amount in controversy in this Action, exclusive of interest and costs, exceeds the sum or value of $75,000.

8.      Venue in the District of Delaware is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the State of Delaware.

## PARTIES AND RELEVANT PERSONS

### A.      Nicole Bolt Comer

9.      Ms. Comer is an adult citizen of the State of Delaware.

10.     Ms. Comer is the founder, Chief Executive Officer ("CEO"), President, and sole owner of CEI.

11.     Ms. Comer is the CEO and President of The Allere Group.

12.     Ms. Comer is Mr. Bolt's daughter.

13.     Ms. Comer is the former owner of 12 Autumnwood Drive, Newark, Delaware.

**B.      Barney P. Bolt, Jr.**

14.      Mr. Bolt is the sole owner of The Allere Group.

15.      Mr. Bolt is Ms. Comer's father.

**C.      Comer Enterprises, Inc.**

16.      CEI is a Pennsylvania corporation with offices in Kennett Square, Pennsylvania.

17.      CEI is an outsource information technology labor provider (a staffing company) with niche specialty in the financial services sector.

18.      Ms. Comer is the sole stockholder, President and CEO of CEI.

**D.      The Allere Group Professional Corporation**

19.      The Allere Group is a Pennsylvania corporation with offices in Kennett Square, Pennsylvania.

20.      The Allere Group is an outsource information technology labor provider (a staffing company) with niche specialty in the financial services sector.

21.      Mr. Bolt is the sole stockholder of The Allere Group.

22.      Ms. Comer is the CEO and President of The Allere Group.

**E.      Moshe Lehrer a/k/a Max Lehrer**

23.      Moshe Lehrer is an adult citizen of the State of Florida.  Upon information and belief from personal knowledge and the attached Broward County Police Report No. 34-2011-180576, concerning Arrest # 20-02793 (the "Broward County Police Report"), Moshe Lehrer has a permanent address of 4020 Galt Ocean Drive 110, Fort Lauderdale, Florida, 33308.

24.      Moshe Lehrer uses the alias "Max" and is commonly known as "Max Lehrer."

25.      Moshe Lehrer has also used the aliases "Max Lear" and "Max Lehar."

26.    Moshe Lehrer is involved in the business of brokering and/or making merchant cash advance loans.  Separately, Moshe Lehrer is involved in purchases and sales of art.

27.    Moshe Lehrer is Avraham Lehrer's son.

28.    Moshe Lehrer was born on March 28, 2001 and, thus, as of the date of the filing of this Complaint, is 19 years old.

29.    Upon information and belief, Moshe Lehrer is (and has been) involved in the world of merchant cash advance lending or, at least, his name has been used in connection with merchant cash advance lending.

30.    Moshe Lehrer is involved with, at least, three separate merchant cash advance businesses with offices in Florida, California and New York.

31.    From December 5, 2018 and continuing through the date hereof, Moshe Lehrer has served and serves as manager of a merchant cash advance lending business named USD Funding, LLC (https://www.usdfunding.com/), a Florida limited liability company, with an address of 5301 North Federal Highway, Suite 395, Boca Raton, Florida, 33487.

32.    Moshe Lehrer is, or, at least as of October 1, 2020, was, involved with a merchant cash advance lending business named Shield Funding (https://shieldfunding.com/) with a New York office at 2 West 46th Street, Suite 204, Mezzanine Floor, New York, New York, 10036 and a California office at 6837 Hayvenhurst Avenue, Van Nuys, California, 91406.

33.    Moshe Lehrer serves as registered agent of – and is otherwise involved with – a merchant cash advance lending business named TGVZG LLC, a Florida limited liability company with an address of 3300 Port Royale Drive, Apartment 349, Fort Lauderdale, Florida, 33308.

F.     **Avraham Lehrer a/k/a Avi Lehrer a/k/a Joe Levin**

34.     Avraham Lehrer is an adult citizen of the State of Florida who, upon information and belief resides at 4020 Galt Ocean Drive 110, Fort Lauderdale, Florida, 33308.  In addition, Avraham Lehrer may continue to maintain a residence at 12 Rockingham Road, Spring Valley, New York, 10977-1114.

35.     Avraham Lehrer is Moshe Lehrer's father.

36.     Avraham Lehrer uses the alias "Joe Levin" and also is known as "Avi Lehrer."

37.     Avraham Lehrer, using the alias "Joe Levin," holds himself out as a private investigator operating as T.O.T. Consulting Services.  See http://www.totpi.com/.

38.     However, in Avraham Lehrer's alternative world where he pretends to be "Joe Levin," his credentials, honesty and qualifications as a private investigator have been called into question by at least one source.  See https://totpiexposed.wordpress.com/totpiscam/ ("Joe Levin is not who you think, the man's real name is Avraham Lehrer and has gone by other names before, he's done this because he's had some run-ins with the law for bribery, and corporate espionage against a Jewish business. It has become a common thing for him to change his name, with all the laws broken, scams, and just ripping people off, he's constantly forced to change his name. He's a fraud, and scam artist who's taken money from hard working Jewish families, and left them with nothing in return. He's supposed to be a big Private Investigator but turn's out he doesn't even have a Private Investigator's license; himself and his business TOTPI are scams. His helicopters he has pictured, and undercover car's aren't his. It's all phony advertising to suck people in that are in need of help, they are not provided any solutions to their problems. Don't let Joe Levin aka Avraham Lehrer trick you, I'm sure his next name change is right around the corner!").

39.    Upon information and belief based on news reports, Avraham Lehrer was charged in 2011 for attempting to bribe a secretary to copy computer files containing information pertaining to her employer.  See https://nypost.com/2011/07/18/pi-busted-as-kosher-spy/ ("Avraham Lehrer, 36, was charged last Thursday with offering a secretary at Shop Delight in Great Neck a $1,000 bribe to copy computer files full of information on suppliers, prices and customers.").

40.    Upon information and belief based on the Broward County Police Report, Avraham Lehrer is alleged to have been involved with his son, Moshe Lehrer in, at least, one violent crime.  As stated in the "Probable Cause Affidavit" section of the Broward County Police Report, Avraham Lehrer played an integral in the incident leading to his then 19-year old son's (Moshe Lehrer's) arrest on November 25, 2020 (emphasis added):

> The defendant, 19 [year old] LEHRER, *and his father* followed the 60 [year old] victim to his residential parking lot with the belief that the victim was hired to stalk them.  LEHRER *and his father* approached the victim and confronted him at which time the victim repeatedly said that they had the "wrong guy."
>
> The victim exited his vehicle and told them he just moved to town 2 weeks ago and has not part in what they are alleging.  LEHRER *and his father* became very aggressive making threats and scaring the victim while recording him on their cell phones.  When the victim swatted a phone out of his face, LEHRER sprayed the victim with pepper-spray.  The victim raced back into his vehicle and tried to get away when *LEHRER's father* jumped on the hood of the victim's vehicle in a "Hollywood-style" manner to prevent him from leaving.  The victim drove away *with the father on the hood*, as LEHRER rear-ended and side-swiped the victim's vehicle with his own.  LEHRER eventually cut off the victim and forced him to stop as officers arrived on scene.  Approximately $8000 in damage was observed on the victim's vehicle.  The victim wishes to prosecute and stated that this crime was done against his will.
>
> Surveillance video and cellphone video captured this event from multiple angles and viewed by officers.  This incident was captured on BWC.

41.     Attached as **Exhibit A** is the Broward County Sheriff's Office Offense Report No. 34-2011-180576, concerning Arrest No. 20-02793, Moshe Lehrer's November 25, 2020 arrest.

42.     Upon information and belief based on review of relevant case law, Avraham Lehrer was sanctioned by the New York Supreme Court, Kings County, for frivolously commencing civil proceedings.  As stated in 762 Park Place Realty, LLC v. Lehrer, 2015 WL 1933986, at *4 (N.Y. Sup. Ct.April 29, 2015):

> Defendant also moves to impose sanctions upon plaintiff Avraham Lehrer and for an award of reasonable attorneys' fees. The authority to impose sanctions is left to the court's discretion (see Landes v Landes, 248 A.D.2d 268, 269 [1st Dept 1998]). Conduct during litigation is sanctionable if it is "completely without merit in law or fact and cannot be supported by a reasonable argument for the extension, modification, or reversal of existing law" or if "it is undertaken primarily to delay or prolong the resolution of litigation, or to harass or maliciously injure another, or it asserts material factual statements that are false" (Mascia v Maresco, 39 A.D.3d 504, 505 [2d Dept 2007]). The Court finds that sanctions are warranted here because it is undisputable that Avraham had surrendered his interest in 762 Park Place prior to bringing this action. The 2008 Agreement clearly states that this is the case, and Avraham does not dispute having signed this document. Therefore, it was frivolous for Avraham to bring the instant action and assert that he was the sole member of 762 Park Place and that Shlomo had no interest in 762 Park Place.

43.     As set forth herein, the Delaware State Police issued a warrant for Avraham Lehrer's arrest in connection with certain of the subject matter of this complaint, namely, terroristic threats against Ms. Comer.

**G.     Rosa Lehrer.**

44.     Rosa Lehrer is an adult citizen of the State of Florida who, upon information and belief resides at 4020 Galt Ocean Drive 110, Fort Lauderdale, Florida, 33308.

45.     Rosa Lehrer is Moshe Lehrer's mother.

46.     Rosa Lehrer is Avraham Lehrer's wife.

47.     Rosa Lehrer is the owner of KMI.

**J.      KMI Group, Inc.**

48.     KMI Group is a New York corporation with its principal place of business in New York.

49.     KMI is in the business of merchant cash advance lending.

50.     KMI is owned and controlled by Rosa Lehrer, Moshe Lehrer's mother and Avraham Lehrer's wife.

## FACTUAL BACKGROUND

**A.      CEI Experienced Difficulties From 2018 through 2019 Due to Use of
Merchant Cash Advance Loans to Cover Cash Flow Interruptions.**

51.     As a staffing company, CEI's business model requires that it pay its contractors every week, regardless of the fact that CEI does not get paid as regularly by its clients.  Thus, strategic management of cash flow is essential.

52.     In 2018, CEI experienced difficulties with cash flow that prompted it to use merchant cash advance ("MCA") loans to cover cash flow interruptions.  As happens with many businesses that use MCA loans, amounts due under such loans snowballed and began to affect CEI's financial structure on a deeper level than cash flow.

53.     Negotiation with the MCA lenders and managing cash flow under the overarching burden of a series of MCA loans required an inordinate amount of focus for a small business like CEI.

54.     By the summer of 2019, CEI had consulted with bankruptcy counsel and readied for a bankruptcy filing.

55.     On August 18, 2019, CEI filed for chapter 11 bankruptcy in the Eastern District of Pennsylvania to achieve a global resolution to CEI's MCA-related challenges.

B.     <u>**Moshe Lehrer Secured a Position Based on Fraud.**</u>

56.     In the midst of its ill-fated experiment with MCA loans, CEI applied to a business named "Shield Funding" for funding.  In response, Ms. Comer received an email on October 24, 2018, that stated it was from "max lehar" and was signed "Max Lear."

57.     Thus, the October 24, 2018 email was Ms. Comer and CEI's first interaction with Moshe Lehrer.  Moshe Lehrer's email stated as follows:

> **From:** max lehar
> **Sent:** Wednesday, October 24, 2018 12:36 PM
> **To:** Nicole Bolt Comer
> **Subject:** Trying to reach you
>
> Hey,
> This is Max from Shield Funding. We see that you applied for some
> funding on our website and I have been trying to reach you.
> If you can kindly call me back at your earliest convenience so that
> we can get you get you funded promptly.
> Additionally, I am attaching our application. Please fill it out and
> send it back together with the last 4 months of your business banking
> statements to expedite the process.
> If you have any questions, call me at any time.
> Looking forward in working with you.
> --
> Max Lear
> (347)977-6757
> Shield Funding

58.     A true and correct copy of Moshe Lehrer's October 24, 2018 email to Ms. Comer is attached as <u>**Exhibit B**</u>.

59.     From October 2018 through the summer of 2019, Ms. Comer and other CEI employees maintained contact with Moshe Lehrer as he brokered merchant cash advance financings for CEI.

60.     Ms. Comer met Moshe Lehrer in person on July 1, 2019, when he appeared uninvited at her house to tell her he could help her business.

61.     Thereafter, Moshe Lehrer gained access to CEI as an employee after achieving Ms. Comer's confidence through a series of intentional misrepresentations regarding his skills, abilities, experience and business relationships.

62.     Moshe Lehrer misrepresented himself as having (i) financial acumen sufficient to be a chief financial officer, (ii) the ability to obtain inexpensive financing to cover periodic cash flow shortfalls, (iii) experience sufficient to guide a company such as CEI and/or The Allere Group, and (iv) the business relationships necessary to generate new business for CEI and/or The Allere Group.

63.     In reliance on Moshe Lehrer's misrepresentations, in July 2019, Ms. Comer and Mr. Bolt entered into talks with Mr. Lehrer to purchase 49% of the stock in CEI and 49% of the stock in The Allere Group.  In exchange for the stock, Mr. Lehrer promised to make a $600,000 investment into CEI and/or the Allere Group.

64.     Over the course of the following year, Ms. Comer noticed that Moshe Lehrer did not ever perform the work of a chief financial officer, obtain inexpensive financing, provide any valuable or meaningful contributions to the leadership of CEI and/or The Allere Group, or generate any new business for CEI and/or The Allere Group.  Ms. Comer realized over the course of that year that all Moshe Lehrer did was broker exorbitantly expensive merchant cash advance loans for CEI.  In addition to all of the foregoing, Moshe Lehrer did not make his promised $600,000 capital contribution to either or both of CEI and/or The Allere Group.

65.     In addition, although Moshe Lehrer visited the offices with some regularity from September 2019 through February 2020, from and after the onset of the global COVID-19 pandemic, it was obvious that Moshe Lehrer stopped doing anything whatsoever for CEI or The Allere Group.

66.     Moshe Lehrer fancied himself as a middle man for CEI's negotiations with MCA lenders.  In reality, Moshe Lehrer acted as a broker for more high-interest MCA loans, all for his own benefit.

**C.     Moshe Lehrer Pushed for CEI to Engage "Joe Levin" to Perform Services for CEI Without Ever Telling Ms. Comer that "Joe Levin" Was an Alias for Avraham Lehrer, Moshe Lehrer's Father.**

67.     On numerous occasions after gaining interior access to CEI and The Allere Group, Moshe Lehrer recommended to Ms. Comer that she engage the services of a man named "Joe Levin" to perform services for CEI and/or The Allere Group.

68.     Moshe Lehrer never told Ms. Comer or anyone else at CEI that "Joe Levin" was actually his father, Avraham Lehrer.

69.     In July 2019, at Moshe Lehrer's suggestion, Ms. Comer engaged "Joe Levin" to provide protection for her and her family after receipts of odd threats to her and her family.  Neither Ms. Comer nor anyone in her family ever received any threats before Moshe Lehrer and "Joe Levin" appeared in their lives.

70.     In the spring of 2020, "Joe Levin" contacted Ms. Comer and gave her unsolicited advice regarding how to manage funds related to CEI's paycheck protection ("PPP") loan in the spring of 2020.  "Joe Levin" later told Ms. Comer that his unsolicited advice was worth $75,000 and demanded that CEI pay him that amount.  Moshe Lehrer supported "Joe Levin's" demand for $75,000.

71.     In the summer of 2020, "Joe Levin" contacted Ms. Comer and told her that he needed to be compensated for his help with CEI's negotiations with MCA lenders.

72.     Ms. Comer was incredulous at "Joe Levin's" demand for payment.

73.    In response, "Joe Levin" continued to argue that he should be paid for services he alleged he provided to CEI and/or Ms. Comer and that he wanted to "keep it civil."

74.    Ms. Comer told Moshe Lehrer that "Joe Levin's" suggestion felt like a shakedown and she would not pay "Joe Levin" because "Joe Levin" did not do anything for CEI.

75.    In response, Moshe Lehrer strenuously advocated for paying "Joe Levin" and said that "Joe Levin" should be paid $100,000 over twelve (12) months for services allegedly provided.

76.    Moshe Lehrer never told Ms. Comer that "Joe Levin" is actually his father – or that "Joe Levin's" real name is Avraham Lehrer.

77.    "Joe Levin" also never told Ms. Comer that his real name is Avraham Lehrer or that he is Moshe Lehrer's father.

**D.    Ms. Comer, CEI and The Allere Group Terminated All Relationships and Interactions with Moshe Lehrer.**

78.    On September 24, 2020, Ms. Comer met with Moshe Lehrer at the offices of CEI and The Allere Group in Kennett Square, Pennsylvania, and informed Moshe Lehrer that he was terminated from his employment with CEI and that Ms. Comer and Mr. Bolt were terminating all talks toward Moshe Lehrer's purchase of 49% of the stock of CEI and/or The Allere Group (the "Termination Meeting").

79.    Ms. Comer was accompanied at the Termination Meeting by CEI's corporate attorney, CEI's chief operations officer, and a personal friend.

80.    When Ms. Comer told Moshe Lehrer the reasons for his termination, primarily the fact that he is a fraud, Moshe Lehrer stated, "I can explain all of my lies."

81.    Moshe Lehrer was irate at the Termination Meeting and threatened Ms. Comer before leaving the room.

**E.** **Following the Termination Meeting, Moshe Lehrer and Avraham Lehrer Terrorized Ms. Comer and her Family, in an Attempt to Extract a Settlement from Ms. Comer.**

      **1.** **False Police Report**

82.    Moshe Lehrer's and Avraham Lehrer's campaign of terror against Ms. Comer started with a false police report.

83.    Immediately following the Termination Meeting, Moshe Lehrer walked across the street to the Kennett Square Police Station (Borough of Kennett Square) and made an outlandishly false and defamatory police report against Ms. Comer. Specifically, Moshe Lehrer falsely reported to the Kennett Square Police Department that Ms. Comer sexually assaulted him when he was a minor after prying him with copious amounts of alcohol.

84.    Ms. Comer did not meet Moshe Lehrer in person until after he was eighteen (18) years old. Ms. Comer never had sex with Moshe Lehrer.

      **2.** **Relying on Moshe Lehrer's False Police Report and Other False Statements, "Joe Levin" and Moshe Lehrer Blackmailed Ms. Comer.**

85.    Next, Moshe Lehrer's and Avraham Lehrer's campaign of terror moved to blackmail.

86.    Shortly after the Termination Meeting on September 24, 2020, Avraham Lehrer, still posing as "Joe Levin," texted Ms. Comer the following text, furthering his and Moshe Lehrer's refrain of "sexual abuse" and/or "underage soliciting" and other untrue statements, all of which have continued throughout their campaign of terror against Ms. Comer:

> Good morning Nicole,
> I hope you are having a beautiful morning as I am myself.
> I know that your broke, and most likely paying your lawyer with sex.
> I'm just curious if he's still next to you…?
> Maybe he can help you answer these questions:
> How many years are you facing for underage soliciting?

> How many years are you facing in federal prison for lying to the
> bankruptcy court?
> How many years are you facing for laundering money, wire fraud,
> and tax evasion?
> And how many years are you facing for hiring a hit man to kill your
> husband Mark?
>
> When he gives you these answers, I hope you'll be able to enjoy the
> rest of your day. Because you have absolutely no idea what you just
> did to yourself.
>
> Wishing you a great rest of your day!
> With much love,
> Joe

87.     A true and correct copy of the text sent September 24, 2020 at 11:35 a.m. from Avraham Lehrer, posing as "Joe Levin," to Ms. Comer is attached as **Exhibit C**.

88.     From October 1, 2020 through October 7, 2020, Avraham Lehrer, still posing as "Joe Levin," sent another round of texts to Ms. Comer, plainly attempting to blackmail her with Moshe Lehrer's and his refrain of untrue statements concerning Ms. Comer's character.  A true and correct copy of the texts sent between October 1, 2020 and October 7, 2020, from Avraham Lehrer to Ms. Comer is attached as **Exhibit D**.

### 3.     Death Threats and other Terroristic Threatening Voicemails.

89.     Moshe Lehrer's and Avraham Lehrer's campaign of terror against Ms. Comer then transitioned to death threats.

90.     On September 25, 2020, someone "spoofed" Ms. Comer's daughter's telephone number (making the call appear as it was coming from her daughter's cell phone).  During that call, a male individual told Ms. Comer that he was going to blow her head off.

91.     Ms. Comer recognized the voice on the other end of the line as "Joe Levin" (now known to be Avraham Lehrer).

92.     Ms. Comer reported the death threat to the Delaware State Police.

93.     Subsequent to further investigation, relevant Delaware law enforcement authorities issued a warrant for Avraham Lehrer's arrest.  Attached as **Exhibit E** is a print-out of publicly available information concerning Warrant No. 0620005390, DUC no. 2010006528, for the arrest of Avraham Lehrer.

94.     On October 14, 2020, Ms. Comer's husband (also an employee of CEI), daughter, executive assistant at CEI, chief operating officer of CEI, former financial manager and outside corporate attorney all received terrifying communications.

95.     The voicemail to Ms. Comer's executive assistant stated as follows:

> Hey Liz – listen – you f**k with the wrong people.  Nicole f**k with the wrong people and so did you and you're going to f**kin' go down for it.  You f**kin' hear me?  I know where you f**kin' live.  I'm gonna come there and slit your f**kin' throat.  You f**kin' dumb bitch.

96.     The voicemail to Ms. Comer's husband, also a co-worker of Ms. Comer's, stated as follows:

> Hey Marc – How you doing aah?  Listen you f**k with the wrong motherf**kin' people.  I'm gonna come after you so f**kin' hard you ain't gonna f**kin feel [indecipherable] I'm gonna cut your f**kin' dick off and send it to your f**kin' daughter, you f**kin' hear me?  Do not f**k with the wrong people.

97.     The voicemail to Ms. Comer's daughter (then 20 years old) stated as follows:

> Hey Natalie – listen – tell your mother she better do the right thing before it's too late.  No more f**kin' money, no f**kin' people can protect her anymore.  You hear me?  If you love your mother, tell her to do the f**kin' right thing.

98.     The voicemail to Ms. Comer's personal friend stated as follows:

> Hey Sharon how you doin' – listen – I hope you enjoyed your trip to Bermuda wit' Nicole.  Next time I f**kin' see you with her, I'm gonna f**kin kill you.  You f**kin' hear me?  You ain't f**kin' with the wrong people ever again.

99.    The voicemail received by CEI's corporate attorney stated as follows:

Hey Joe – I hope you enjoy Nicole's f**kin' pussy.  Listen – I'm coming after you.  I'm gonna cut your f**kin' dick off and put it in her f**kin' corpse.  You f**kin' hear me?  You're both gonna be f**king dead.  Stop f**kin' with the wrong people.

100.    Moshe Lehrer is the only common thread between all of the people that received voicemails on October 14, 2020.  Moshe Lehrer knew all of the people who received voicemails.

101.    In addition, Moshe Lehrer is the only person outside of CEI that knew the identity of CEI's corporate attorney – because he attended the Termination Meeting.  In fact, CEI had never had any interaction with the attorney that attended the Termination Meeting prior to his work to prepare for the Termination Meeting and otherwise concerning CEI's interactions with Moshe Lehrer.

102.    Neither Ms. Comer, CEI, nor The Allere Group is or has been involved in any violently contentious matters nor has either of them had any significantly adverse interactions with anyone – except Moshe Lehrer.

103.    Avraham Lehrer's and Moshe Lehrer's death threats and harassment were always coupled with timely emails imploring Ms. Comer and to settle with them.  Their texts were often laced with attempts to blackmail Ms. Comer with outlandishly false accusations.

104.    One such text From Avraham Lehrer to Ms. Comer's husband, received on September 25, 2020, continued with the same refrain of untrue allegations against Ms. Comer, including the preposterous allegation of "underage sexual relations."    Avraham Lehrer's September 25, 2020 text to Ms. Comer's husband stated as follows:

Good afternoon Mark,
From the very first time I met you, I noticed the level your intelligence and intellect.  For that alone, I hope you decide to relay some smart advice to Nicole.

> You and I both know that there is no way she getting away with all of this.   Especially considering the $700k that Max put down recently, plus more.
> There is plenty against her right now from money laundering, tax evasion, wire fraud, underage sexual relations, and the list goes on….
> For children to see their own mother being accused/indicted on such charges can be horrifying, embarrassing, and detrimental.
> There's a way to avoid this, I just hope that you choose to try and help her see that.

105.    A true and correct copy of the September 25, 2020 text from Avraham Lehrer to Ms. Comer's husband is attached as **Exhibit F**.

106.    Moshe Lehrer also continued to beg for a settlement of his purported claims against Ms. Comer.  One such text, received by Ms. Comer's husband on September 26, 2020, stated as follows:

> Good morning
> I know you have clear instructions not to answer.  But in matter of the fact you're the only one that can fix this.  Trust me and call me.
> You dont have to speak just listen
> I promise you 5min wont' do any harm
> Don't call me later when it's too late
> This is a rookie mistake
> Please send me your attorneys info we believe you were apart of this scam

107.    A true and correct copy of the September 26, 2020 text from Moshe Lehrer to Ms. Comer's husband is attached as **Exhibit G**.

108.    On January 21, 2021 Avraham Lehrer and/or Moshe Lehrer sent a barrage of harassing, defamatory and not-so-subtly threatening texts to Ms. Comer's, CEI's and The Allere Group's business contacts.  The January 21, 2021 emails and texts continued Avraham Lehrer's and Moshe Lehrer's blackmail regarding "sexual misconduct and abuse."  It is not yet known how many such texts and emails were sent.  The texts of which Ms. Comer is aware all stated as follows:

> Hello [name]

> You are receiving this message in regards to your affiliation with
> Nicole comer.
> As you may be aware, Nicole has been implicated recently in a slew
> of unscrupulous business dealings in addition to sexual misconduct
> and abuse allegations.
> This is a warning to you that as the situation proceeds we are not
> concerned with collateral damage. For your own sake do not be
> deluded by alignments and predispositions; Nicole must be avoided
> at all costs.

109.    The texts sent on January 21, 2021 all purport to be signed with a reference to an infamously treacherous gang. But it is clear that these messages emanated from either Moshe Lehrer and/or Avraham Lehrer because: (i) Ms. Comer is not and has not been in any significant conflict with anyone other than Moshe Lehrer and Avraham Lehrer; (ii) Ms. Comer has never been the subject of any allegations of sexual misconduct or abuse except for the outlandishly false and defamatory allegations stated by Moshe Lehrer and Avraham Lehrer; and (iii) the texts were sent to a relatively recent list of CEI business contacts – which are known to Moshe Lehrer by virtue of his now-terminated access to CEI and The Allere Group business.

110.    In the midst of the barrage of defamatory texts and emails to Ms. Comer's business contacts on January 21, 2021, Moshe Lehrer texted Ms. Comer a picture of a computer monitor showing a portion of a spreadsheet of CEI business contacts with red lines superimposed, scratching out the names with smiley faces with hearts in place of eyes.

111.    A true and correct copy of the text with the photo sent by Moshe Lehrer to Ms. Comer is attached as **Exhibit H**.

### 4.    Escalated Violence

112.    As later discovered by Ms. Comer and Mr. Bolt, on January 29, 2021, Avraham Lehrer and Moshe Lehrer's campaign of terror against Ms. Comer took on a markedly new level of violence and extended to Ms. Comer's father, Mr. Bolt.

113.    On January 30, 2021, Mr. Bolt received an unsolicited visit from the Delaware State Police at his home in Delaware.  Mr. Bolt was told that the Delaware State Police had received a call from the Pennsylvania State Police that there were two incidents in Pennsylvania the night before (on January 29, 2021) concerning two individuals who were demanding information concerning Mr. Bolt's whereabouts.  The representative of the Delaware State Police said that he was there to make sure Mr. Bolt was okay.

114.    Thereafter, Ms. Comer and Mr. Bolt inquired of the Pennsylvania State Police to obtain the facts of what happened on January 29, 2021 in Pennsylvania.

115.    Ms. Comer and Mr. Bolt learned that there were two incidents and was told the following by the Pennsylvania State Police:

- In the first incident, two men forced their way into a home where Mr. Bolt lived previously, brandished a fire-arm and demanded that the current resident tell them where Mr. Bolt lives.  During this incident, the two men stated that Mr. Bolt's daughter is the subject of sexual abuse allegations.

- In the second incident, two men were caught trying to break into another home where Mr. Bolt lived previously and were run off into the night after being seen by a neighbor.

116.    On February 4, 2021, Ms. Comer received a text, referring to one of Mr. Bolt's previous addresses involved in the incidents of January 29, 2021, which stated as follows:

Find out what happened at 143 honey.  Lucky day for your dad.  I assure You Next time there will be no mistake on the address. See you soon

117.    The February 4, 2021 text concerning Ms. Comer's father and "143 honey" purports to be signed by a well-known violent street gang but it is clear that the text received February 4, 2021 emanates from Avraham Lehrer and Moshe Lehrer because: (i) it makes clear that the incidents of January 29, 2021 were an effort to terrify Ms. Comer; (ii) the men who forced their way into one of the homes on January 29, 2021 explicitly mentioned Avraham Lehrer and

Moshe Lehrer's continued refrain of bogus allegations against Ms. Comer of sexual assault and abuse; (iii) Ms. Comer has never before and never since been accused of sexual misconduct; (iv) Ms. Comer had never before and never since had any interactions with anyone that would get so heated as to prompt a violent home invasion, other than her ongoing experience with Avraham Lehrer's and Moshe Lehrer's campaign of false police reporting, blackmail and terroristic threats.

118.    A true and correct copy of the text received by Ms. Comer on February 4, 2021 concerning Ms. Comer's father and "143 honey" is attached as **Exhibit I**.

119.    Also on February 4, 2021, Ms. Comer received another text from multiple different phone numbers, which were all clearly sent by Avraham Lehrer, stating as follows:

> Hi Nicole
> Hope all is well.  It has been some time since we last connected.
> As you are aware you are getting pretty close to an expiration date. Just to remind you of all your business adventures you Nicole Comer are responsible for.
>       1.   Regarding the loan you received from PPP it is a full fledge fraud you know.  The good news is that the government offered to the public 30% of the total loan to anyone reporting fraud.
>       2.   In reference to the Silvercup, bankruptcy case it will be reopened.
>       3.   Regarding Santander and Mr. Hecht the proof of you committing fraud is on the table.
>       4.   Regarding all personal and sexual assault charges with Max will be handled by my lawyer.
>       5.   In reference to your lawyer Joe I am happy that you are getting your desirable needs taken care of for your pleasure.
>       6.  In reference to your bankruptcy lawyer Rob your personal needs are a huge game player but you so kindly manipulated him that you forgot to tell him the truth.  He will have no choice but to go tell the judge the truth.
>       7.   Regarding your two beautiful children may god bless them with health wealth and happiness.
> Your daughter Natalie who has unfortunately never met her biological dad and your son Max, two pure souls.  Why would a devoted caring mom want to give her children more pain?
> Why would a daughter want to drag her special needs father (who got naked in the bank) into more pain?

Nicole I hope you are in good spirits. I know we all go through challenges in our lives and we can get dragged down by not healthy emotions, unfortunately. We all have the same god and thankfully he always gives us a second chance.

The Seven Laws of Noah include prohibitions against worshiping idols, cursing God, murder, adultery and sexual immorality, theft, eating flesh torn from a living animal, as well as the obligation to establish courts of justice.

On every dollar bill it says The UNITED STATES OF AMERICA [space] IN GOD WE TRUST.

I hope and pray god gives you the strength to choice the truth. Wishing you and your family health wealth and happiness and inner Peace!

120.    A true and correct copy of the text received by Ms. Comer on February 4, 2021 that mentions Ms. Comer's children by name, false allegations concerning a PPP loan, false allegations of bankruptcy crimes, false allegations of sexual assault, and the Seven Laws of Noah, is attached as **Exhibit J**.

121.    Avraham Lehrer and/or Moshe Lehrer are the only two people in the world who could have sent the February 4, 2021 text that mentions Ms. Comer's children by name, false allegations concerning a PPP loan, false allegations of bankruptcy crimes, false allegations of sexual assault, and the Seven Laws of Noah.

### F.    Attempts to Get Avraham Lehrer and Moshe Lehrer to Stop Contacting Ms. Comer Have Failed.

122.    Ms. Comer has tried on multiple occasions to get Avraham Lehrer and Moshe Lehrer to stop contacting her. All attempts have been expressly disregarded by Avraham Lehrer.

1.     **Failed Attempt No. 1:  September 25, 2020**

123.     On September 25, 2020, after the initial barrage of harassing texts and false police report, CEI's corporate attorney contacted the Lehrers' attorney, Brian Condon, to advise him of his clients' behavior.  During the course of that conversation, CEI's corporate attorney demanded that Brian Condon tell his clients to stop contacting Ms. Comer.  In response, Brian Condon said not to worry about the threatening (scary) text messages and harassment because "they're not violent."

124.     Thereafter, neither Moshe Lehrer nor Avraham Lehrer stopped texting Ms. Comer, her family or certain of her friends.

2.     **Failed Attempt No. 2:  October 6, 2020**

125.     On October 6, 2020, upon information and belief from direct communication with a Delaware State Police Trooper, a representative of the Delaware State Police contacted Brian Condon to inform Brian Condon that if Avraham Lehrer and Moshe Lehrer do not stop contacting Ms. Comer that they will be arrested.

126.     One hour later, Avraham Lehrer texted Ms. Comer and stated as follows:

> Dear Nicole and Mark,
> Interestingly enough, I just received a phone call from the Delaware Police Precinct.  Stating that you had filed a police report against me.  I'm assuming it's just another one of your minions.  As he refused to give me a call back number and only provided an email address…
> It's funny to me that you think that I'll loose any sleep over this.
> It's truly the least of my worries.
> On the other hand, though, I want you to think about a hypothetical instance where you found out that I, a 43 year old man had sexual relations with your 20yr old daughter, gave her drugs and drinks at bars….etc?
> How would you feel?
> I'd only imagine you'd think of nothing less than killing me yourself.
> Now, imagine how I feel, knowing you did all that to MY son.

> I honestly thought you were smarter than this Nicole.
> Seems to me that the deputy that called is also on your "special"
> payroll.
> Obviously I just wanted to wish you the upmost best!
> I always had faith in you!

127.    A true and correct copy of Avraham Lehrer's October 6, 2020 text to Ms. Comer is attached as **Exhibit K**.

128.    Since October 6, 2020, neither Avraham Lehrer nor Moshe Lehrer have stopped contacting Ms. Comer.

**3.    Failed Attempt Nos. 3 and 4:  October 14, 2020**

129.    On October 14, 2020, a representative of the Delaware State Police contacted Brian Condon to advise him that Avraham Lehrer should turn himself in.  In response, Brian Condon told the Delaware State Trooper who called him that he will take the information but was no longer involved.

130.    Also on October 14, 2020, CEI's corporate attorney called Brian Condon to inform Brian Condon that his clients had just made a series of death threats to a host of Ms. Comer's family, professional colleagues and a personal friend.  In response, Brian Condon said he is not involved anymore and told CEI's corporate attorney to not contact him again.

**G.    The Eastern District of Pennsylvania Action**

131.    In the midst of Avraham Lehrer's and Moshe Lehrer's campaign of terror against Ms. Comer, Moshe Lehrer sued Ms. Comer in the Eastern District of Pennsylvania (the "EDPA Action").  See Lehrer v. Comer, Case No. 2:20-cv-05228-GJP (E.D.Pa.), commenced October 20, 2020.  Moshe Lehrer claims in the EDPA Action that he and Ms. Comer entered into a common law partnership.  Moshe Lehrer asserts claims against Ms. Comer for (i) breach of partnership; (ii)

breach of fiduciary duty; and (iii) accounting, all stemming from CEI's, The Allere Group's, and Ms. Comer's termination of all relationships with Moshe Lehrer.

132.    This Action is separate from and independent of the EDPA Action.

**H.    Rosa Lehrer's and KMI's Malicious Prosecution and Slander of Title.**

133.    Also in the midst of Avraham Lehrer's campaign of terror, harassment and blackmail of Ms. Comer, Rosa Lehrer (Moshe's mother and Avraham's wife) used the entity KMI to maliciously prosecute two civil actions in separate Delaware courts against Ms. Comer. In connection with one such action, Rosa Lehrer caused KMI to slander title to Ms. Comer's personal residence by unlawfully recording a *lis pendens* against Ms. Comer's property in blatant derogation of the black-and-white language of Delaware's *lis pendens* statute.

**1.    The Superior Court Action and the Unlawful *Lis Pendens***

134.    On November 10, 2020, Rosa Lehrer (Moshe Lehrer's mother and Avraham Lehrer's wife) caused KMI to file a complaint in the Delaware Superior Court against Ms. Comer for alleged breach of a personal guaranty. See KMI Group, Inc. v. Nicole Bolt Comer, Civil Action No. N20C-11-086-JRJ (the "Superior Court Action").

135.    In reality, the Superior Court Action was nothing more than an attempt to harass Ms. Comer and to frustrate the imminent sale of her home – which was scheduled to close on December 10, 2020.

136.    In connection with the Superior Court Action, Rosa Lehrer caused KMI to record a *lis pendens* against Ms. Comer's personal residence, 12 Autumnwood Drive, Newark, Delaware (the "Lis Pendens").

137.    The Lis Pendens was the real reason for Rosa Lehrer causing KMI to commence the Superior Court Action – by recording the Lis Pendens, Rosa Lehrer hoped to be able to create

a cloud on title to Ms. Comer's real property that would not be cured before the scheduled December 10, 2020 closing.

138.    Rosa Lehrer then caused KMI's lawyers to contact the closing attorney and, at least, one of the real estate agents involved in Ms. Comer's closing and tell them that the Lis Pendens would never be cleared before the sale and that they should postpone the sale.

139.    On December 1, 2020, Ms. Comer filed an Emergency Motion for Mandatory Cancellation of Lis Pendens Pursuant to 25 Del. C. § 1606 (the "Motion to Cancel Lis Pendens"). A copy of the Motion to Cancel Lis Pendens is attached as **Exhibit L**. The Superior Court, Judge Jurden, scheduled a hearing on the Motion to Cancel Lis Pendens for December 3, 2020 (the "Emergency Hearing").

140.    After the attorneys that Rosa Lehrer hired for KMI reviewed the Motion to Cancel Lis Pendens, they waited until the "11th hour" before the Emergency Hearing to inform Ms. Comer's counsel that KMI would release and cancel the Lis Pendens.  KMI's late notice to Ms. Comer's counsel resulted in KMI not informing the Court until an hour before the Emergency Hearing that KMI would voluntarily release and cancel the Lis Pendens.

141.    On December 7, 2020, Rosa Lehrer caused KMI to voluntarily dismiss the Superior Court Action pursuant to Delaware Superior Court Rule 41(a)(1)(I).

142.    In the end, the Court found that there was no good faith basis in the first place to have recorded the Lis Pendens in such obvious violation of plainly stated Delaware statutory law. That finding, coupled with KMI's late notice to opposing counsel and the Court that it would cancel the Lis Pendens (thereby obviating the need for an emergency hearing for which Judge Jurden and her law clerk spent at least a full day preparing) caused the Court to issue a fee award

of $16,097 in favor of Ms. Comer for the fees and costs she incurred in connection with the Superior Court Action.

143.    A copy of the Superior Court (Judge Jurden) Order dated February 1, 2021 awarding Ms. Comer $16,097 in attorneys' fees and costs for KMI's unlawful recordation of the Lis Pendens is attached as **Exhibit M**.

144.    The fee award does not fully make Ms. Comer whole in connection with her defense against the Superior Court Action.

145.    The *only* reason Rosa Lehrer caused KMI to commence the Superior Court Action was to manufacture a basis to record the Lis Pendens.  In turn, the only reason for Rosa Lehrer to cause KMI's attorneys to record the Lis Pendens was to harass Ms. Comer and frustrate the sale of her personal residence – all of which was intended to gain leverage over Ms. Comer.

146.    Despite assertions by the attorneys Rosa Lehrer caused KMI to use for the Superior Court Action that they were going to refile the Superior Court Action in the Superior Court, to the best of Ms. Comer's and undersigned counsel's knowledge, information and belief, no such action has ever been filed (or refiled).

### 2.    **The Chancery Court Action.**

147.    On December 4, 2020 (prior to dismissing the Superior Court Action), Rosa Lehrer caused KMI to seek a second bite at the apple by commencing virtually the same action in the Delaware Chancery Court, albeit dressed with claims that KMI's attorneys apparently thought would win the day in Chancery Court.  See KMI Group, Inc. v. Nicole Bolt Comer, Civil Action No. 2020-1033-JRS (the "Chancery Court Action").

148.    Together with its complaint, verified by Rosa Lehrer, KMI filed a motion for a temporary restraining order to stop the sale of Ms. Comer's sale of her personal residence, then scheduled to close the following week, on December 10, 2020.

149.    The pleadings that Rosa Lehrer directed KMI's attorneys to file in the Chancery Court Action were filled with false statements concerning Ms. Comer's character and financial status, as well as specious legal arguments.

150.    After oral argument on December 9, 2020, the Chancery Court, Vice Chancellor Slights, summarily denied KMI's request for a TRO and expedited proceedings.  The transcript of Vice Chancellor Slights' oral opinion is attached as **Exhibit N**.

151.    On January 7, 2021, Rosa Lehrer caused KMI's attorneys to voluntarily dismiss the Chancery Court Action pursuant to Chancer Court Rule 41(a)(1)(i).

152.    The Chancery Court Action, like the Superior Court Action before it, was filed for the sole purpose of harassing Ms. Comer and frustrating Ms. Comer's home – in hopes of gaining leverage in the EDPA Action.  There was no good faith factual or legal basis whatsoever for the commencement and prosecution of the Chancery Court Action.  See Exhibit M.

## COUNT I:  PERMANENT INJUNCTION

## MS. COMER AGAINST MOSHE LEHRER AND AVRAHAM LEHRER

153.    Each of the foregoing allegations is incorporated as though fully set forth herein.

154.    Ms. Comer requires permanent injunctive relief to put a permanent stop to Moshe Lehrer's and Avraham Lehrer's campaign of terror, harassment and blackmail against her.

155.    Without the requested permanent injunction, Ms. Comer (and others) will continue to be terrorized by Defendants' unwanted and unlawful contacts with Ms. Comer, any

member of her family, CEI, The Allere Group and any employees, customers, clients, vendors or known prospective clients or customers of CEI or The Allere Group.

156.    No adequate remedy at law exists to rectify the harm that Ms. Comer will continue to suffer without the issuance of the requested permanent injunction.  Moreover, given the nature and recent escalation of threats and violence associated with Moshe Lehrer and Avraham Lehrer's campaign of terror against her and those associated with her, a permanent injunction is essential for Ms. Comer's and her family's safety

157.    A permanent injunction will cause absolutely no harm whatsoever to Moshe Lehrer and Avraham Lehrer.  All that is asked is that Moshe Lehrer and Avraham Lehrer stop contacting Ms. Comer and other individuals and entities that neither Moshe Lehrer nor Avraham Lehrer have any reason to contact.

158.    On the other hand, Ms. Comer, her family, friends and employees will continue to be terrorized and, thus, severely and irreparably harmed if the requested permanent injunction is not granted.

159.    The public interest favors issuance of the requested permanent injunction – namely to prevent emotional, mental and physical harm to citizens of the State of Delaware and to prevent the acts complained of herein from occurring in the State of Delaware.

## COUNT II:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## MS. COMER AGAINST AVRAHAM LEHRER AND MOSHE LEHRER

160.    Each of the foregoing allegations is incorporated as though fully set forth herein.

161.    As set forth herein, Avraham Lehrer and Moshe Lehrer have terrorized Ms. Comer through a false police report, death threats, threatening voicemails to those in her orbit, and

continual texts to her and those in her orbit – including an unknown quantity of business contacts – regarding bogus allegations of sexual abuse.

162.    Avraham Lehrer and Moshe Lehrer intentionally engaged in extreme or outrageous conduct that caused Ms. Comer severe emotional distress.

163.    Avraham Lehrer and Moshe Lehrer's conduct described herein exceeds the bounds of decency and is intolerable in a civilized community.

164.    Ms. Comer has suffered damages, including severe emotional distress as the result of Avraham Lehrer's and Moshe Lehrer's campaign of terror, harassment and blackmail.

## COUNT III:  INVASION OF PRIVACY (INTRUSION UPON SECLUSION)

## MS. COMER AGAINST AVRAHAM LEHRER AND MOSHE LEHRER

165.    Each of the foregoing allegations is incorporated as though fully set forth herein.

166.    Through their campaign of terror against Ms. Comer, Avraham Lehrer and Moshe Lehrer have intruded in Ms. Comer's solitude, seclusion, private affairs or concerns.

167.    Avraham Lehrer's and Moshe Lehrer's intrusions into Ms. Comer's private affairs and physical environment would be highly offensive to a reasonable person.

168.    Ms. Comer has suffered damages as the result of Avraham Lehrer's and Moshe Lehrer's intrusion upon Ms. Comer's seclusion.

## COUNT IV:  MALICIOUS PROSECUTION

## MS. COMER AGAINST ROSA LEHRER AND KMI GROUP, INC.

169.    Each of the foregoing allegations is incorporated as though fully set forth herein.

170.    Rosa Lehrer caused KMI Group, Inc. to institute and continue the Superior Court Action and the Chancery Court Action.

171.    KMI Group, Inc. (under Rosa Lehrer's management) voluntarily dismissed both the Superior Court Action and the Chancery Court Action after failing to frustrate Ms. Comer's sale of her real property.

172.    Rosa Lehrer maliciously caused the Superior Court Action and the Chancery Court Action to be instituted and continued.

173.    There was no probable cause for the institution and continuation of the Superior Court Action and the Chancery Court Action.

174.    As a result of Rosa Lehrer's malicious prosecution of the Superior Court Action and the Chancery Court Action, Ms. Comer has suffered damages.

<u>**COUNT V:  SLANDER OF TITLE**</u>

<u>**MS. COMER AGAINST  ROSA LEHRER AND KMI GROUP, INC.**</u>

175.    Each of the foregoing allegations is incorporated as though fully set forth herein.

176.    Rosa Lehrer caused KMI Group, Inc. to record the Lis Pendens against Ms. Comer's real property in the New Castle County office of the Recorder of Deeds.

177.    KMI Group's recordation of the Lis Pendens against Ms. Comer's real property was malicious.

178.    The Lis Pendens presented false information concerning the state of title to Ms. Comer's real property.

179.    As the result of Rosa Lehrer's actions in causing KMI Group, Inc. to maliciously and publicly record the Lis Pendens against Ms. Comer's real property, Ms. Comer has suffered special damages in the form of pecuniary loss.

WHEREFORE, Ms. Comer respectfully requests that the Court enter judgment in Ms. Comer's favor:

a)    permanently enjoining Moshe Lehrer and Avraham Lehrer from having any contact whatsoever with Ms. Comer, any member of her family, CEI, The Allere Group, or any employees of CEI or The Allere Group;

b)    awarding Ms. Comer damages arising out of or related to Avraham Lehrer's and Moshe Lehrer's intentional infliction of emotional distress and/or invasion of Ms. Comer's privacy;

c)    awarding Ms. Comer damages arising out of or related to Rosa Lehrer's and KMI's malicious prosecution of the Superior Court Action and the Chancery Court Action and their slander of title to Ms. Comer's former personal residence;

d)    awarding Ms. Comer injunctive relief;

e)    awarding Ms. Comer punitive damages;

f)    ordering Defendants to pay Ms. Comer's attorneys' fees and costs; and

g)    awarding Ms. Comer such other and further relief as is just and proper.

## <u>JURY DEMAND</u>

Ms. Comer demands a jury on all claims triable by jury.

Dated: March 4, 2021

Respectfully submitted,

REED SMITH LLP

*/s/ Mark W. Eckard*
Brian M. Rostocki (No. 4599)
Mark W. Eckard (No. 4542)
Nicholas R. Rodriguez (No. 6196)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 778-7500
Facsimile:  (302) 778-7575
Email:  brostocki@reedsmith.com
Email:  meckard@reedsmith.com
Email:  nrodriguez@reedsmith.com

*Counsel to Nicole Bolt Comer*